The undersigned respectfully dissents from the Opinion and Award granting plaintiff compensation. It is clear from the greater weight of the competent evidence plaintiff failed to causally relate her various medical conditions to the accident.
Plaintiff's injuries were certainly not as significant in the weeks and months after the accident as she would now like us to believe. Many of the conditions which she now contends are disabling were not present until months or years after the accident. When causation is at issue the totality of the expert testimony must be considered. See Holley v. ACTS, Inc.,357 N.C. 228, 232, 581, S.E. 2d 750, 753 (2003).; Young v. HickoryBus. Furn., 353 N.C. 227, 538 S.E. 2d 912 (2000). When looking at the totality of the expert testimony, it is clear there is not a causal relation between plaintiff's various conditions and the accident.
Plaintiff's claim that a breast augmentation was required as a result of the accident is without merit. Dr. Bowers, plaintiff's plastic surgeon, testified that the accident had no impact on plaintiff's left implant and was not certain the right implant had a leak or if it had not been filled to capacity. In fact, there was no evidence of trauma to the right implant that would indicate the accident was the more likely to cause a leak or decrease in fluid. Dr. Bowers indicated that to make such a conclusion would be simply guessing. Guessing is far from medical certainty and certainly falls below the standard set forth inHolley Holley., 357 N.C. at 232, 581 S.E. 2d at 753. By finding causation exists based on guessing or speculation and without considering the totality of the expert testimony, the majority has ignored the rulings of the State Supreme Court. Causation must be established by evidence "such as to take the case out of the realm of conjecture and remote possibility." Id. Mere possibility is not sufficient.
Plaintiff presented insufficient evidence that her headaches resulted from the accident. The only complaint of headaches by plaintiff was made on the day of the accident, May 16, 2001. Plaintiff did not complain or seek treatment for headaches until October 2002. The treating neurologist, Dr. Freeman, testified he was not able to make a full assessment or opinion because of the delay from the time of the accident to her initial visit. Dr. Freeman also testified there was insufficient objective information to support her claim. As a result, Dr. Freeman was not able to make an opinion that the headaches were either caused or exacerbated by the accident.
Plaintiff failed to present competent evidence that her carpel tunnel syndrome and thumb joint pain are related to the accident. Plaintiff first complained of carpel tunnel symptoms to Dr. Freeman in late 2002. Although Dr. Dalldorf had treated plaintiff post-accident on several occasions, plaintiff did not inform Dr. Dalldorf of similar symptoms until 2003. Dr. Dalldorf was not able to relate any carpel tunnel symptoms to the accident since the symptoms simply were not present. Also, Dr. Kuzma admitted it was unusual for carpel tunnel symptoms to develop so far after the accident and if plaintiff were gripping the steering wheel with both hands, both hands would be injured. Plaintiff claimed injury only to the right hand.
Dr. Dalldorf began treating plaintiff for post-accident injuries in 2001 and had an established relationship with plaintiff. Dr. Kuzma did not examine plaintiff until 2003, almost 2 years after the accident and did not have access to many of the pertinent medical records. Therefore, his opinion was based solely upon his assumptions and is contrary to the evidence in plaintiff's medical records.
The Deputy Commissioner erred in favoring the opinion of Dr. Kuzma over that of Dr. Dalldorf. In doing so, only speculative parts of expert testimony were considered. Additionally, a temporal relationship between an incident and the onset of symptoms is not sufficient to form the basis for a competent medical opinion on causation. Young, 353 N.C. at 323-33,538 S.E. 2d at 916. Based upon the evidence and testimony, the opinions of Dr. Kkuzma are based on the temporal relationship of the accident and subsequent symptoms.
I further disagree with the majority's opinion that there was a causal relation between the accident and plaintiff's knee injury. Plaintiff did not complain of knee pain until seven weeks after the accident. Her knee injury was not the result of the accident, but rather stemmed from her work as an adult entertainer.
Plaintiff sought treatment for a knee injury from Dr. Dalldorf in 2000. During surgery on the knee in 2000, Dr. Dalldorf discovered that plaintiff suffered from a Grade III Chondromalacia of the patella. According to Dr. Dalldorf, this indicated a moderate advanced breakdown of the cartilage under her knee cap and loose pieces of cartilage inside plaintiff's knee. Due to recurrent pain, a second orthroscopy was performed in 2001 prior to the accident, revealing previous findings and new degeneration. Dr. Dalldorf testified he expected ongoing flare-ups absent a traumatic event. Therefore, it is reasonable to believe Dr. Dalldorf's testimony that it was difficult to determine if plaintiff's ongoing problems were related to the accident or a result of her degenerative condition which preexisted the accident.
Based upon the greater weight of the competent evidence, I feel plaintiff's claims are without merit. Plaintiff should not be entitled to disability benefits or medical compensation.
Accordingly, I dissent
This the __ day of _______, 2006
 S/_____________ BUCK LATTIMORE CHAIRMAN